```
1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF GEORGIA
2                             ATLANTA DIVISION


3

     UNITED STATES OF AMERICA,  )
4             Plaintiff,        )
                                )
5    -vs-                       )   Indictment No. 1:13-CR-63-1-ODE
                                )
6    DONG SEOK YI,              )
              Defendant.        )
7


8


9


10               Transcript of the Guilty Plea Proceedings
                    Before the Honorable Orinda D. Evans,
11            United States District Court Senior Judge
                             February 7, 2014
12                           Atlanta, Georgia


13


14


15
     APPEARANCES OF COUNSEL:
16
     On behalf of
17   the Government:                   Stephen H. McClain,
                                       Assistant United States Attorney
18
                                       Susan Coppedge,
19                                     Assistant United States Attorney

20   On behalf of
     the Defendant:                    Brian Steel, Esq.
21                                     Raymond B. Lail, Esq.


22
     Reported stenographically by:
23   Amanda Lohnaas, RMR, CRR
     Official Court Reporter
24   United States District Court
     Atlanta, Georgia
25   (404) 215-1546
```

1                    (Friday, February 7, 2014, 3:25 p.m.)

2                    THE COURT:  Good afternoon, folks.  Would you swear

3      the interpreter, please?

4                    THE COURTROOM DEPUTY:  Mr. Lee?

5                    (Interpreter duly sworn.)

6                    THE COURTROOM DEPUTY:  Please state your name for the

7      record.

8                    THE INTERPRETER:  Jason Lee.

9                    THE COURTROOM DEPUTY:  Thank you.

10                   THE COURT:  Would you all have a seat, please.

11                   Okay, ladies and gentlemen, we are here this

12     afternoon in the case of the United States versus Dong Seok Yi.

13     And I apologize if that's the wrong pronunciation.

14                   I was informed by my assistant that counsel had

15     called the office and asked if we would accept a binding plea

16     agreement.  She related that to me and I was not too sure what

17     you all meant by "binding plea agreement" so I thought it was

18     just better to talk about it after we all got here.

19                   What I think of as a binding plea agreement is an

20     agreement where both sides agree that the Court will impose a

21     certain sentence and the Court commits to do that.  That's what

22     you all are asking me.  And the answer to that question is no,

23     I wouldn't be able to do that and the reason is simply that I

24     don't know enough about the case or about the defendant to make

25     that commitment at this point.

1            There is a possibility, and I would be willing to

2      consider this, there is a provision in the rules by which the

3      Court can accept a conditional plea where the understanding is

4      that the defendant is seeking a particular sentence and the

5      Court conditionally agrees to give that sentence with the

6      condition being that the Court have an opportunity to look at

7      the presentence report and see if the agreed upon sentence

8      feels comfortable once I have gotten more information about the

9      case and about the defendant.

10            At that point the Court can agree to go ahead and

11      impose the pre-agreed sentence, or the Court can reject the

12      plea, and in that event the defendant has the right to reject

13      the plea.  In other words, walk away from it.  If that were to

14      happen it would leave us in a position where we would need to

15      go forward with the trial at that point.

16            If you all want to pursue that option I'm open to

17      that.  I've looked at the plea agreement you've submitted and I

18      just don't feel like I know enough about the case at this point

19      so as to be able to evaluate it.  And I doubt -- I don't think

20      I have ever in all of the 35, I think it's about 35, years that

21      I've been on the bench, I don't think I've ever accepted just a

22      set plea agreement.  So how would you like to proceed?

23            MR. MCCLAIN:  Your Honor, I think that's what we are

24      contemplating.  If you look at page 8 of the plea agreement

25      under the provision that says "Binding Sentence of 21 Months is

1    Reasonable."

2            THE COURT:  Page 8?

3            MR. MCCLAIN:  Yes, Your Honor.  That last sentence

4    under that reasonable language there that says:  "If the Court

5    does not accept the binding plea, the plea agreement will be

6    withdrawn and neither the government nor the defendant will be

7    bound by this agreement."

8            And that's the language that we have done.  I know

9    Judge Thrash had one, for instance, where we did the plea.  The

10   Court kind of accepted it, I don't know if it's tentative or

11   not, then we had the sentencing and he actually did what Your

12   Honor just described.  If the guidelines came out different

13   than what he hoped for, he came out at sentencing and told the

14   defendant that the condition of it being binding is no good and

15   if you'd like to proceed to sentencing in a nonbinding basis

16   you can, otherwise the plea is withdrawn and let's proceed to

17   trial.  He gave the defendant 15 minutes to think about it.

18           So at least our intent with that sentence was to

19   create that sort of situation.  So if the Court got the PSR,

20   was not pleased with where you are, that this sentence would

21   kick in and so that the Court then would say I'm not accepting

22   the binding plea, and then by operation of this sentence the

23   plea agreement would be withdrawn and then no one's bound by

24   it.

25           THE COURT:  Well, I think you may be in the same

1    ballpark with me on this but I don't think we're saying exactly

2    the same thing.  This written plea agreement that you all gave

3    me just a few minutes ago, to start with it says it's pursuant

4    to Rule 11(a)(2).  I don't think that's correct.  I think what

5    I'm talking about is in 11(c)(1)(C).

6              MR. MCCLAIN:  I think you're right, Your Honor.

7              THE COURT:  A conditional plea.

8              MR. MCCLAIN:  I think in the other one that's what we

9    cited.

10             THE COURT:  11(a)(2) is just not apt.  And the way I

11   understand 11(c)(1)(C) to work, and I haven't done that that

12   many times myself, I'll tell you, but we have done it a few

13   times, and the deal is that I would tentatively accept the plea

14   subject to the review of the presentence report.  If I don't

15   like what I see in the presentence report at the, I guess it

16   would be at the sentencing hearing, I would say to the defense,

17   I just don't feel I can give the sentence that you want and you

18   now have an opportunity to withdraw your guilty plea if you

19   want to.  That's my vision of how that would work.

20             So I think if you -- if both sides want to pursue

21   that idea you will need to make some changes to this plea

22   agreement.

23             Mr. Steel, do you have anything to say?

24             MR. STEEL:  Your Honor, may we just have just a brief

25   moment in the Court's presence but just whisper with Mr. Yi to

1    explain this?

2              THE COURT:  Sure, yes.

3              MR. STEEL:  Thank you.

4              (Pause in the proceedings.)

5              MR. STEEL:  May I speak?

6              THE COURT:  Sure.

7              MR. STEEL:  Your Honor, Brian Steel along with the

8    honorable Ray Lail.  Thank you for this time.  I want to thank

9    the prosecutors as well, they've been nothing but professional

10   the entire time.

11             Mr. Yi does understand, through the interpreter as

12   well, and he communicates pretty well, actually, in English but

13   it's not a hundred percent.  But he stated that within the

14   ballpark that the Court -- within the rules that the Court has

15   said, we are on the exact same understanding and we'd like to

16   go forward if the government would go forward, understanding

17   that at one point it may be rejected by this Honorable Court

18   and we'll just have to wait and see what happens in the future.

19   So we would like to go forward understanding the conditional

20   guilty plea.

21             THE COURT:  Okay, all right.  Same for the

22   government?

23             MR. MCCLAIN:  Yes, Your Honor.

24             THE COURT:  Have you got that plea agreement marked

25   up now?

1          MR. MCCLAIN:  Your Honor, we can change the 11(a)(2)

2     at the top to 11(c)(1)(C).

3          THE COURT:  Okay.

4          MR. MCCLAIN:  I note that on page 3 where we have the

5     binding language it does cite Rule 11(c)(1)(C).

6          THE COURT:  It sure does.

7          MR. MCCLAIN:  If there's other changes -- so I think

8     we all agree that's the procedure.  If there's other changes

9     the Court wants us to make --

10         THE COURT:  What about, you mentioned a paragraph on

11    page 8; is that right?

12         MR. MCCLAIN:  That was on page 8, yes, Your Honor.

13         THE COURT:  Okay.  Well, I think actually that's

14    fine, so just that one change at the beginning to say

15    (c)(1)(C).

16         MR. MCCLAIN:  And I just wrote that in, Your Honor,

17    and I'll initial it and Mr. Steel is going to initial that

18    change.

19         THE COURT:  All right.  Now, we will need to go

20    forward with a plea colloquy and let me just suggest that we

21    just go ahead and get started with it and if counsel have

22    questions as we go you can tell me.  But I will need to ask

23    Mr. Yi some questions.  Why don't you all come on up to the

24    podium?  And, Mr. Yi, if you would just stand right behind the

25    microphone, please.

1              Would you please go ahead and administer the oath?

2              THE COURTROOM DEPUTY:  Mr. Yi, if you would raise

3     your right hand, please.

4              (Defendant duly sworn.)

5              THE COURTROOM DEPUTY:  Thank you.

6              THE COURT:  Mr. Yi, I'm Judge Evans.

7              THE DEFENDANT (In English):  Yes, Your Honor.

8              THE COURT:  Do you want for the interpreter to

9     translate everything or would you like to just talk with me

10    and, if you need to, consult with the interpreter?

11             THE DEFENDANT:  I talk with Your Honor and then if I

12    don't understand a word, talk to him.

13             THE COURT:  Okay.  If at any point you don't

14    understand just raise your hand or speak up and we will get the

15    interpreter to help out.

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Okay.  I'm Judge Evans.  I know that you

18    have probably discussed this case in some detail with your

19    attorneys before coming to court today and I believe that they

20    have probably told you what your rights are.

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  However, the law does require that I

23    personally discuss with you your decision to plead guilty --

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  -- before I can accept your guilty plea.

1      Do you understand that?

2                  THE DEFENDANT:  Yes, I understand.

3                  THE COURT:  I want to tell you first that you do not

4      have to plead guilty.  Of course, if you wish to do so, you may

5      continue pleading not guilty and if you were to do that your

6      case would go to trial.

7                  Now, Counsel, I assume you all are retained; is that

8      correct?

9                  MR. STEEL:  That is true, Your Honor.

10                 THE COURT:  All right.  If this case went to trial

11     you would be entitled to be represented by your counsel and if

12     you were to become unable to afford their services, then I

13     would appoint counsel who would represent you at no expense to

14     you at trial.

15                 At trial your attorney would be able to cross-examine

16     the government's witnesses.  He would be able to subpoena any

17     available witnesses to testify on your behalf.  You would be

18     able to testify at trial, if you wished to do so, but you could

19     not be required to testify if you elected not to testify.

20                 It would be the government's responsibility to prove

21     the charges against you beyond a reasonable doubt at trial, and

22     if the government failed to do that, the jury would find you

23     not guilty.

24                 You would be entitled to have your case heard by a

25     jury of your peers.  That is, a jury of 12 citizens.

1        Now, if I accept your guilty plea today to Count Two,
2    of course, there won't be any trial in this case.  You will
3    have given up your right to a trial and you will have given up
4    the rights associated with a trial which I just told you about,
5    and that is assuming that I stick with the sentence that you
6    all have agreed on.
7        Do you understand what I'm saying?
8        THE DEFENDANT:  Yes, I understand, Your Honor.
9        THE COURT:  Okay.  If I accept your guilty plea
10   today, the only basis on which you could withdraw your guilty
11   plea later would be if I don't agree to give the sentence that
12   both sides have agreed on.  Do you understand that?
13       THE DEFENDANT:  I understand, Your Honor.
14       THE COURT:  All right.  Now, I'm not going to go
15   over -- I normally, at a guilty plea hearing, I go over what
16   the range of possible sentencing options is.  I'm not going to
17   do that at this point because both sides have agreed on what
18   the sentence is going to be.  The only way you could get a
19   different sentence would be if you agreed to it, okay?
20       THE DEFENDANT:  Yes.
21       THE COURT:  But I will just state here for the record
22   that the plea agreement says that what both sides agree is a
23   reasonable sentence is a sentence of 21 months with three years
24   of supervised release.  Is that correct?
25       THE DEFENDANT:  Yes.

1          THE COURT:  Counsel, is restitution or forfeiture a

2    consideration in this case?

3          MR. MCCLAIN:  Restitution is not, Your Honor.

4    Forfeiture is because there was a bank account that was seized

5    in the College Prep Academy's name.  I believe it had 40- or

6    $50,000 in it.  There was a seizure warrant that was issued and

7    the plea agreement says that forfeiture will be completed and

8    the defendant waives any challenge to that forfeiture.

9          THE COURT:  Okay, so that's all been taken care of

10   separately?

11         MR. MCCLAIN:  I think there's probably a final order

12   that Your Honor would need to sign at sentencing but --

13         THE COURT:  Okay, but it's not going to be part of

14   the sentence in this case?

15         MR. MCCLAIN:  It would be part of the sentence, I

16   believe.  Yes, I believe it would be a final order of

17   forfeiture that Your Honor would have to find.

18         THE COURT:  I was thinking that that would be

19   administrative but, in any event, let me ask counsel for the

20   defendant, is that your understanding also, that there will be

21   a forfeiture of this money and that Mr. Yi is not claiming any

22   of it?

23         MR. STEEL:  As part of this agreement, the binding

24   agreement, that was taken into consideration as part of the

25   totality of the agreement.

1          THE COURT:  Is that correct, Mr. Yi?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  And there will be a special assessment of

4    $100 in this case.  Both sides agree to that; is that correct?

5          MR. MCCLAIN:  Yes.

6          THE COURT:  Is that right, Mr. Yi?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Mr. Yi, I want to point out to you that

9    your plea agreement contains a limited waiver of appeal rights.

10   Specifically -- I don't know that it really applies in light

11   of -- the only way this could come up would be if I decline to

12   accept the plea agreement after looking at the presentence

13   report and there was later an adjudication in a sentencing

14   hearing.  So I don't really see how this affects Mr. Yi's

15   appeal rights at this point.  Do you all disagree with that?

16         MR. MCCLAIN:  Your Honor, I would just say, I mean,

17   it says if we appeal he could appeal, but I would say he has

18   waived his right to appeal.  So if for some reason, even though

19   he's currently not unhappy with a 21-month sentence, if after

20   Your Honor imposes it he decides he is --

21         THE COURT:  Well, you're right about that, yes, to

22   that extent I agree with you.

23         What they're saying, Mr. Yi, is that if I do impose

24   this 21-month sentence that both sides have asked for with the

25   three years of supervised release, you would not later be able

1    to change your mind and appeal.  Do you understand that?

2              THE DEFENDANT:  I understand, Your Honor.

3              THE COURT:  Has the government promised you anything

4    to get you to plead guilty that's not in the written plea

5    agreement?

6              THE DEFENDANT:  No.

7              THE COURT:  Have you had an adequate opportunity to

8    discuss your case with Mr. Steel and co-counsel before deciding

9    to plead guilty?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Are you satisfied with their services?

12             THE DEFENDANT:  I'm satisfied.

13             THE COURT:  Are both of you all counsel of record?  I

14   know Mr. Steel was but --

15             MR. LAIL:  I think I am, Judge.

16             THE COURT:  Okay, all right.

17             I'm going to need to ask you a few questions to

18   determine if there is a factual basis for a guilty plea in this

19   case.  I cannot accept a guilty plea unless there is a factual

20   basis for it, so I am going to need to ask you some questions

21   to determine that.  And you do need to understand that your

22   responses are being given under oath, so if you were to make a

23   false answer to any question you could be prosecuted for

24   perjury.  Do you understand what I've just said?

25             THE DEFENDANT:  I understand.

1              THE COURT:  Okay.  Mr. McClain, if this case went to

2       trial what would the government's evidence show?

3              MR. MCCLAIN:  Your Honor, if the case went to trial

4       we would prove that the defendant, along with co-defendant Song

5       and co-defendant An Kil, operated an English language school in

6       Duluth, Georgia, primarily for Korean-speaking students to

7       learn English.

8              From that school the defendants facilitated the

9       issuance of F-1 student visas to some individuals who were not

10      truly students but instead they were working at bars in

11      Gwinnett County, usually in Korean bars in the Gwinnett County

12      area, and those individuals were not entitled to F-1 student

13      visas.

14             The FBI and Homeland Security ran an undercover

15      operation at the school.

16             THE COURT:  You mean they were not entitled to the

17      F-1 visas because they weren't really students?

18             MR. MCCLAIN:  Correct, Your Honor.  They did not

19      attend class and they worked and under the immigration rules

20      and regulations you're not entitled to work but for some

21      limited exceptions if you're in an F-1 visa status.  And the

22      defendants knew these individuals were going to work in the

23      bars but nevertheless agreed to facilitate them getting these

24      student visas.

25             The FBI and Homeland Security ran an undercover

1    operation at the school, which is called College Prep Academy.

2    They went in and pretended to be a bar owner and financier who

3    wanted to have some of the women admitted as students into the

4    school with the understanding that instead of going to school

5    they would work at the bars.  And they met with Mr. Yi,

6    Mr. Song, Ms. An Kil, the other co-defendants, and they

7    discussed that and the defendant discussed different ways that

8    the visa status could be fraudulently obtained.

9            On December 9th, 2010, the undercovers went in.  They

10   met with Mr. Yi, the defendant here.  They explained they

11   wanted to get Korean females admitted into the U.S. to work in

12   the bar.  Mr. Yi explained the different ways to obtain legal

13   status for the aliens and he advised that a student visa was

14   the quickest and easiest way to do that.

15           A confidential source later met with Mr. Yi and

16   Mr. Song to discuss enrolling the Korean females into the

17   school and Mr. Song put that source, the female, in touch with

18   the other co-defendant, Mr. Kim, in Los Angeles, for Mr. Kim to

19   provide fraudulent documents to support the visa applications,

20   some fraudulent bank accounts, things like that.  Mr. Park,

21   also known as Mr. Kim.  Actually, his name is S. Kim a/k/a

22   Chris Park, is the way it's delineated in the indictment.

23           On April 5th, 2011, Yi met with the bar owner and he

24   instructed Ms. An Kil, the co-defendant, to prepare two Form

25   I-20s for the female and the Form I-20 certified that these two

1  aliens would attend school and that they were eligible for F-1
2  visa status.  And Ms. An Kil in fact issued those two I-20s to
3  the two aliens, even though the defendants knew that those
4  aliens would not attend school but instead would work in the
5  bar.
6          Those Form I-20s also contained financial information
7  on them that was false.  It was never provided by the female.
8  The I-20 said that the female had $18,000 in the bank, because
9  one of the requirements under immigration rules is that if
10 you're a student you have the financial wherewithal to be in
11 the United States for the year that you're attending school,
12 and it said she had $18,000.  That wasn't true.  No information
13 like that had been provided to the school, Mr. Yi, or to Ms. An
14 Kil, and yet the I-20 said that she had that financial means to
15 be in the United States and so that was false.
16         The evidence would show that the I-20 is a document
17 that is required by immigration laws and regulations to
18 evidence the fact that someone is going to attend school and
19 therefore is eligible for an F-1 student visa and the I-20 also
20 is submitted under oath and signed under penalty of perjury.
21 And so Count Two is one of those two I-20s that were issued,
22 that Mr. Yi directed Ms. An Kil to issue.  She signed them
23 under penalty of perjury and Count Two is one of those two
24 I-20s that was issued in the course of this undercover
25 operation that the FBI and Homeland Security operated.  So that

1    would be the main evidence on Count Two.

2             THE COURT:  Mr. Steel, is that what the government's

3    evidence would show on Count Two?

4             MR. STEEL:  Substantially, Your Honor.  There's

5    tape-recordings for approximately 22 months, intermittently.

6    Not every one involves Mr. Yi.  We've gone through every one,

7    we had them translated.  The government also had them

8    translated.  What the honorable prosecutor said is exactly

9    right, it's right out of the words that are captured on the

10    audio recordings of Mr. Yi.  He was encouraged by other people

11    but he clearly said those things that he articulated to the

12    Court.

13             THE COURT:  Mr. Yi, you heard the prosecutor say what

14    the evidence would show if this case went to trial.  Did he

15    correctly state the facts?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Okay.  Now, as I understand it, what he's

18    saying is that you told Ms. --

19             MR. STEEL:  An Kil.

20             MR. MCCLAIN:  An Kil.

21             THE COURT:  An Kil, okay -- you told Ms. An Kil to go

22    ahead and issue an I-20 to somebody that was not entitled to

23    get an I-20.  Is that correct?

24             THE DEFENDANT:  That's correct, Your Honor.

25             THE COURT:  And I think I understand, you all may

1    need to help me with this, but I believe what the prosecutor is

2    saying is that this person was not entitled to get an I-20

3    because they were not really a full-time student.  Is that

4    correct?

5         THE DEFENDANT:  That's correct, Your Honor.

6         THE COURT:  And is it also correct that this person

7    who got the I-20 was somebody who was working in a bar in

8    Duluth?  Is that right?

9         THE DEFENDANT:  That's right, Your Honor.

10        THE COURT:  Okay.  Now, did you understand at the

11   time that the person that got this I-20 was not legally

12   entitled to get it?

13        THE DEFENDANT:  Yes, Your Honor.

14        THE COURT:  Counsel, anything else on the factual

15   basis?

16        MR. MCCLAIN:  No, Your Honor.

17        THE COURT:  Would you please state what the

18   government would have to prove beyond a reasonable doubt at

19   trial to convict Mr. Yi on this charge?  The legal elements.

20        MR. MCCLAIN:  Yes, Your Honor, under Title 18,

21   Section 1546, we would have to prove three things to convict

22   Mr. Yi.

23        We'd have to prove, first, that he knowingly made

24   under oath or subscribed as true under penalty of perjury a

25   false statement; second, it was with respect to a material

1    fact; and, third, that it was in a document required by

2    immigration laws and regulations.

3            And I should say we would have evidence that the

4    falsehoods in the I-20 were material to immigration

5    authorities:  that financial information, the omission of the

6    fact that she was going to be working in the bar, the admission

7    of the fact that she wouldn't really attend class, these would

8    be material facts to the immigration decision.

9            THE COURT:  Okay.  Mr. Yi, that's what the government

10   would have to prove at trial beyond a reasonable doubt to

11   convict you.  Knowing that, do you want to plead guilty in this

12   case?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  Okay.  Now I want to ask about -- in

15   every case I have to look to see if there are any possible

16   collateral adverse effects from the guilty plea and I'm talking

17   now specifically about the possibility of deportation when the

18   defendant does not have a legal status in the United States.

19   What is your status in the United States?

20           THE DEFENDANT:  I'm just citizen.

21           THE COURT:  You are a citizen.  Are you a naturalized

22   citizen or were you born here?

23           THE DEFENDANT:  I'm not born here.  I got the green

24   card and then I be a citizen.

25           THE COURT:  Okay, you have a green card?

1          THE DEFENDANT:  No, I am U.S. citizen.

2          MR. MCCLAIN:  He is naturalized, Your Honor, is our

3    understanding.

4          THE COURT:  Okay.  Now, I do not have any idea,

5    frankly, whether the entry of this guilty plea could have any

6    effects on your status as a citizen.

7          Do you know, Mr. McClain?

8          MR. MCCLAIN:  He's naturalized, Your Honor.  We don't

9    believe it would affect that because the crime occurred well

10   after his naturalization.  I'm not sure what year that was.  So

11   we don't believe it would affect that because to denaturalize

12   him it would have to be a crime, as I understand it, that

13   occurred at a different time and so forth.  So although it's

14   possible, and I think Your Honor is right to admonish him on

15   that, he is naturalized and we don't believe this would affect

16   that status.

17         THE COURT:  Okay.  Well, I do not personally have any

18   knowledge about that.  This is not something I get involved in

19   except to tell people to be careful about it.

20         Mr. Steel, do you know the answer to that question?

21         MR. LAIL:  Judge Evans, it's my understanding, like

22   the U.S. attorney, once you're naturalized I think it needs to

23   be something either that you weren't truthful about during the

24   process they find out later, or a crime they find out before

25   the naturalization process was completed.  I don't think this

1  will affect that.

2          THE COURT:  Tell me your name again, please.

3          MR. LAIL:  Judge, my name is Ray Lail, L-a-i-l.

4          MR. STEEL:  Your Honor, we consulted with a very fine

5  immigration lawyer in Atlanta.  I've spoken with that lawyer,

6  his name is Marshall Cohen, C-o-h-e-n.  I'm just relying on his

7  word as well.  He said that based upon the representation of

8  Mr. Yi that he is a citizen, the date he became a citizen,

9  which I don't recall, this should not affect his ability to

10  stay in the United States at all.

11          I've told Mr. Yi that I've never -- I tell them, just

12  like the Court's telling Mr. Yi, it's a very serious matter by

13  pleading guilty and there are collateral sequences.  He feels

14  comfortable that he will remain in the United States of America

15  but his eyes are open that that's something that we've spoken

16  about.

17          THE COURT:  Okay, thank you.  Okay, Mr. Yi, has

18  anybody threatened you or coerced you to get you to plead

19  guilty?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  Have you had any liquor or drugs before

22  coming to court today?

23          THE DEFENDANT:  No.

24          THE COURT:  What about yesterday?

25          THE DEFENDANT:  No.

1          THE COURT:  Are you tendering your guilty plea freely

2    and voluntarily?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Are there any questions you'd like to ask

5    me at this particular time?

6          THE DEFENDANT:  No.

7          THE COURT:  Counsel, is there anything further?

8          Ms. Sewell has just reminded me that we have not

9    verified the signatures on the papers.  Would you all go ahead

10   and do that?

11         MR. MCCLAIN:  I didn't know if you were being

12   intentional about that because of the nature of the plea or --

13         THE COURT:  No, not really.

14         MR. MCCLAIN:  But we'll do that.

15         Mr. Yi, I'm showing you the Guilty Plea and Plea

16   Agreement, directing you to page 10 of that agreement.  Is that

17   your signature above where it says Signature of Defendant?

18         THE DEFENDANT:  Yes.

19         MR. MCCLAIN:  And page 11 of that agreement, is that

20   your signature above where it says Signature of Defendant?

21         THE DEFENDANT:  Yes.

22         MR. MCCLAIN:  And Mr. Steel and Mr. Lail, you

23   represent Mr. Yi; is that correct?

24         MR. LAIL:  Yes.

25         MR. STEEL:  Yes.

1          MR. MCCLAIN:  And I'm showing you page 10 of the

2    Guilty Plea and Plea Agreement.  Is that both of your

3    signatures above where it says Attorney for Defendant?

4          MR. LAIL:  Yes.

5          MR. STEEL:  That's correct.

6          MR. MCCLAIN:  And is that both of your signatures on

7    page 11 as well?

8          MR. LAIL:  Yes.

9          MR. STEEL:  Yes.

10          MR. MCCLAIN:  I tender the Plea Agreement to the

11    Court.

12          THE COURT:  Based on my questioning of the defendant,

13    I find that his guilty plea is tendered freely and voluntarily.

14    I further find there is a factual basis for the plea.  I will

15    therefore conditionally accept the plea at this time.  We'll go

16    ahead today and set a sentencing hearing and it will be set so

17    that there will be an adequate opportunity for me to look at

18    the presentence report and make my decision and we will advise

19    you at around the time of the sentencing hearing.

20          Anything else for today?

21          MR. MCCLAIN:  No, Your Honor.

22          MR. LAIL:  No, ma'am.

23          MR. STEEL:  No, Your Honor.

24          THE COURT:  Thank you, ladies and gentlemen.

25          (Proceedings concluded at 4:00 p.m.)

1                    C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT:

4    NORTHERN DISTRICT OF GEORGIA:

5

6            I hereby certify that the foregoing pages, 1 through

7    23, are a true and correct copy of the proceedings in the case

8    aforesaid.

9            This the 3rd day of October, 2014.

10

11                        /s/ *Amanda Lohnaas*

12                        _____
                          Amanda Lohnaas, CCR-B-580, RMR, CRR
13                        Official Court Reporter
                          United States District Court

14

15

16

17

18

19

20

21

22

23

24

25