IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DONG SEOK YI, | :: | MOTION TO VACATE |
|    Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL ACTION NO. |
| | :: | 1:13-CR-63-ODE-GGB-1 |
| | :: | |
| UNITED STATES OF AMERICA, | :: | CIVIL ACTION NO. |
|    Respondent. | :: | 1:14-CV-2648-ODE-GGB |

## **FINAL REPORT AND RECOMMENDATION**

Movant is a federal prisoner who, pro se, challenges his judgment of conviction under 28 U.S.C. § 2255. (Docs. 149, 155 in 1:13-cr-63-ODE-GGB.)[1] Respondent filed a brief opposing the motion, (Doc. 160), and Movant filed a reply, (Doc. 162). For the reasons discussed below, the motion should be denied.

**I.   Background**

Two weeks after he was arraigned in this case in April 2013, Movant retained attorney Paul Dzikowski to represent him. (Docs. 28, 42.) One month later, Movant retained attorneys Brian Steel and Raymond Lail, who represented him for the remainder of the case. (Docs. 66, 67.)

---

[1] All citations to the record are to 1:13-cr-63-ODE-GGB.

In February 2014, Movant entered a negotiated guilty plea to one count of immigration document fraud in violation of 18 U.S.C. §§ 2, 1546(a). (Doc. 118-1 ("Plea Agr.").) The superseding indictment charged that on April 5, 2011, Movant and two co-defendants,

> aiding and abetting each other and others known and unknown to the Grand Jury, knowingly made under oath, and knowingly subscribed as true under penalty of perjury, false statements with respect to material facts in a document required by immigration laws and regulations, that is, in a Form I-20, Certificate of Eligibility for Nonimmigrant (F-1) Student Status - For Academic and Language Students, defendants . . ., aiding and abetting each other and others known and unknown to the Grand Jury, falsely represented that the aliens identified [below] . . . were eligible for nonimmigrant (F-1) student status, were pursuing and would be pursuing language training at [College Prep Academy, Inc.], and had information showing the alien's means of support, which representations and statements they then knew to be false[.]

(Doc. 10 at 9-10.)

Section 1546(a) of Title 18 of the U.S. Code makes the conduct described above a federal crime. Section 2 of Title 18 provides that anyone who "commits an offense against the United States or aids, abets, counsels, command, induces or procures its commission, is punishable as a principal" and that anyone who "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." The

2

superseding indictment charged Movant with violating both of those statutes.  (Doc. 10 at 10.)

At Movant's plea hearing, the prosecutor described the facts of Movant's crime as follows:

> [Movant], along with co-defendant Song and co-defendant An Kil, operated an English language school in Duluth, Georgia, primarily for Korean-speaking students to learn English.
> From that school the defendants facilitated the issuance of F-1 student visas to some individuals who were not truly students but instead they were working at bars in Gwinnett County, usually in Korean bars in the Gwinnett County area, and those individuals were not entitled to F-1 student visas.
> The FBI and Homeland Security ran an undercover operation at the school.
> THE COURT: You mean they were not entitled to the F-1 visas because they weren't really students?
> MR. MCCLAIN: Correct, Your Honor. They did not attend class and they worked and under the immigration rules and regulations you're not entitled to work but for some limited exceptions if you're in an F-1 visa status. And the defendants knew these individuals were going to work in the bars but nevertheless agreed to facilitate them getting these student visas.
> . . . .
> On April 5th, 2011, [Movant] met with the bar owner and he instructed Ms. An Kil, the co-defendant, to prepare two Form I-20s for the female and the Form I-20 certified that these two aliens would attend school and that they were eligible for F-1 visa status. And Ms. An Kil in fact issued those two I-20s to the two aliens, even though the defendants knew that those aliens would not attend school but instead would work in the bar.

3

> Those Form I-20s also contained financial information on them that was false. It was never provided by the female. The I-20 said that the female had $18,000 in the bank, because one of the requirements under immigration rules is that if you're a student you have the financial wherewithal to be in the United States for the year that you're attending school, and it said she had $18,000. That wasn't true. No information like that had been provided to the school, [Movant], or to Ms. An Kil, and yet the I-20 said that she had that financial means to be in the United States and so that was false.
>     . . . .
> And so Count Two [to which Movant is pleading guilty] is one of those two I-20s that were issued, that [Movant] directed Ms. An Kil to issue. She signed them under penalty of perjury and Count Two is one of those two I-20s that was issued in the course of this undercover operation . . . .

(Doc. 157 ("Plea Tr.") at 14-17.) The Court then questioned Movant, under oath, about the facts:

> THE COURT: Mr. Yi, you heard the prosecutor say what the evidence would show if this case went to trial. Did he correctly state the facts?
> [MOVANT]: Yes, Your Honor.
> THE COURT: Okay. Now, as I understand it, what he's saying is that you told Ms. –
> MR. STEEL: An Kil.
> MR. MCCLAIN: An Kil.
> THE COURT: An Kil, okay – you told Ms. An Kil to go ahead and issue an I-20 to somebody that was not entitled to get an I-20. Is that correct?
> [MOVANT]: That's correct, Your Honor.
> THE COURT: And I think I understand, you all may need to help me with this, but I believe what the prosecutor is saying is that

4

>       this person was not entitled to get an I-20 because they were not really
> a full-time student. Is that correct?
>       [MOVANT]: That's correct, Your Honor.
>       THE COURT: And is it also correct that this person who got the
> I-20 was somebody who was working in a bar in Duluth? Is that right?
>       [MOVANT]: That's right, Your Honor.
>       THE COURT: Okay. Now, did you understand at the time that
> the person that got this I-20 was not legally entitled to get it?
>       [MOVANT]: Yes, Your Honor.

(*Id.* at 17-18; *see id.* at 8 (Movant administered sworn oath).)

Movant's plea agreement contained the following provision:

> LIMITED WAIVER OF APPEAL:  To the maximum extent permitted by federal law, [Movant] voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground.  [Movant] understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, [Movant] may file a cross-appeal of that same sentence.

(Plea Agr. at 8-9.)  The Court discussed the appeal waiver with Movant at the plea hearing and told him that if the Court sentenced him to the term of imprisonment to which he agreed in the plea agreement, he "would not later be able to change [his] mind and appeal."  (Plea Tr. at 12-13.)  Movant told the Court he understood that. (*Id.* at 13.)  Movant also signed the plea agreement containing the appeal waiver

5

and a separate form acknowledging his understanding of the appeal waiver.  (Plea Agr. at 10-11.)

The Court sentenced Movant to twenty-one months' imprisonment and three years' supervised release, which is the sentence the parties agreed upon in the plea agreement.  (Doc. 134; Plea Agr. at 3.)  Movant did not file an appeal.

Movant claims in his § 2255 motion that he is actually innocent of the crime to which he pled guilty because he did not personally sign any I-20 forms and that his counsel rendered ineffective assistance by allowing him to plead guilty under those circumstances.  (Doc. 149.)  Movant says he "was actually charged with violating § l546(a) by knowingly making under oath a materially false statement in the Form I-20, but, given that he did not therein sign the Form I-20 or certify anything under oath no crime has been committed."  (*Id.* at 4.)

In an amendment to his § 2255 motion, Movant claims prosecutorial misconduct in that Respondent "interfered with [Movant's] counsel of choice [by] seizing his Bank of America business account," the money in which Movant "needed . . . to pay for his counsel of choice. . . . Consequently, [Movant] could not file for a fast and speedy trial because he had not paid his counsel of choice the full amount of the retainer."  (Doc. 155 at 1-2.)  Movant contends he "could not be

6

fairly defended by the counsel of his choice because the government unlawfully seized his money out of his [] bank account." (*Id.* at 2.)

Respondent contends that Movant's first claim fails because he admitted at his plea hearing that he directed someone else to sign the I-20 form at issue and he was properly found guilty as an aider or abettor of the crime. (Doc. 160.) Respondent contends that the appeal waiver in Movant's plea agreement bars his prosecutorial misconduct claim and that the claim fails on its merits. (*Id.*)

In his reply brief, Movant asserts for the first time that not only did he not personally sign the I-20 form at issue, but he also did not "cause the designated official of the [] school to unlawfully issue the I-20 Form or sign it thereby violating the statute as an aider and abettor." (Doc. 162 at 2.) Petitioner says in his reply that he "did not associate himself with the criminal venture, purposefully participate in it, nor seek by his actions to make it succeed." (*Id.*)

## II. Relevant Legal Standards

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise

7

subject to collateral attack.  28 U.S.C. § 2255.  A sentence is subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice.  *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant.  *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984).  As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000).  To establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that his lawyer took or would have failed to take the action he contends the lawyer should have taken.  *Id.* at 1315.

8

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Id.* at 697.

An appeal waiver, including a waiver of the right to collaterally challenge a conviction or sentence via § 2255, is enforced if it is made knowingly and voluntarily. *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005); *United States v. Bushert*, 997 F.2d 1343, 1350-51 (11th Cir. 1993). The waiver is knowing and voluntary if either: "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver . . . or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Williams*, 396 F.3d at 1341 (quotation marks omitted).

**III.   Analysis**

An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28

U.S.C. § 2255(b); *Fontaine v. United States*, 411 U.S. 213, 215 (1973).  The record in this case conclusively demonstrates that Movant is not entitled to relief under § 2255.

The appeal waiver in Movant's plea agreement bars his prosecutorial misconduct claim regarding his frozen bank account.  As discussed in Part I, Movant acknowledged in writing that he understood and agreed to the appeal waiver.  The Court also discussed the appeal waiver with Movant at the plea hearing.  The record demonstrates that Movant knowingly and voluntarily agreed to the appeal waiver, and it bars his prosecutorial misconduct claim.  *See Williams*, 396 F.3d at 1342.

Even if the claim was not barred, it has no merit.  A criminal defendant's assets, including cash in a bank account, may be frozen before trial "based on a finding of probable cause to believe that the assets are forfeitable."  *United States v. Monsanto*, 491 U.S. 600, 615 (1989).  That is so even if the defendant planned to use the assets to pay his lawyer.  *Id.* at 616; *see id.* at 614 ("[N]either the Fifth nor the Sixth Amendment to the Constitution requires Congress to permit a defendant to use assets adjudged to be forfeitable to pay that defendant's legal fees.").

10

The Court found probable cause to believe that the money in Movant's Bank of America account for the College Prep Academy was forfeitable and issued a warrant for seizure of that account at the time of Movant's arraignment. (Doc. 160-1.) The funds in the account thus were not seized by prosecutorial misconduct or any other improper means. Movant's contrary claim lacks merit.[2]

The appeal waiver likely does not bar Movant's claim that his lawyers were ineffective for allowing him to plead guilty to a crime without a factual basis for his guilt. While the U.S. Court of Appeals for the Eleventh Circuit has not "specifically reached the issue of whether a valid appeal waiver can preclude § 2255 claims based on ineffective assistance of counsel that challenge the validity of the plea or the waiver itself," it has held in unpublished cases that a waiver did not bar such claims. *Patel v. United States*, 252 F. App'x 970, 974 (11th Cir. 2007); *see Williams v. United States*, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005) (noting "there may be a distinction between a § 2255 claim of ineffective assistance

---

[2] At his plea hearing, Movant did not tell the Court that there were any problems with counsel's defense because of the frozen bank account despite a discussion of that account and the seizure warrant that froze it. (Plea Tr. at 11-12.) Movant agreed that if he pled guilty "there will be a forfeiture of this money and that [he] is not claiming any of it." (*Id.*) Movant told the Court that he was satisfied with counsel's representation. (*Id.* at 13.)

in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement," but finding it unnecessary to decide the issue). The defendant in *Patel* had an appeal waiver like Movant's and, like Movant, "explicitly challenge[d] the validity of his guilty plea" on the basis of ineffective assistance of counsel. *Patel*, 252 F. App'x at 972, 975. The court of appeals held that the claim was not barred by the appeal waiver. *Id.* at 975.

Movant's plea agreement, and the appeal waiver in it, is an inseparable part of the plea itself. Because Movant contends that his guilty plea is invalid at least in part because he received ineffective assistance of counsel, the validity of the plea agreement is at issue. I thus find that the plea agreement does not bar Movant's claim challenging the plea. *See id.*; *Eleanya v. United States*, No. 1:11-CR-282-CAP-3, 2013 WL 2434568, at *3 (N.D. Ga. June 4, 2013) ("Eleanya's challenges to the validity of his guilty plea based on ineffective assistance are not barred by his appeal waiver.").

Movant's claim fails because a factual basis for his guilt was established at his plea hearing. It was established at the hearing that while Movant did not personally sign the I-20 forms at issue, he directed a co-defendant to do so. (Plea

12

Tr. at 14-18.) Movant told the Court, under oath, that he directed the co-defendant to sign the forms knowing that the forms contained false information and that the alien who was the subject of the forms was not entitled to an F-1 visa. (*Id.*) The conduct to which Movant admitted established his guilt under the aiding and abetting statute. *See* 18 U.S.C. § 2. Movant was explicitly charged with violating that statute. (Doc. 10 at 10.)

Only after Respondent made that obvious point in its response to Movant's § 2255 motion did Movant change course and claim, in direct contradiction to his sworn statements at the plea hearing and in his plea agreement, that he did not direct the co-defendant to sign the I-20 forms. (Doc. 162.) Movant cannot prevail by simply changing his story after he is incarcerated. His sworn statements to the Court carry great weight. When a defendant pleads guilty, "there is a strong presumption that the statements made during the [plea] colloquy are true," *United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987), and those statements "constitute a formidable barrier in any subsequent collateral proceedings," *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Movant did not waver in his admission to the Court at his plea hearing of the specific conduct that he now denies. He expressed no doubt or reservations. And

13

as discussed above, he did not deny in his § 2255 motion that he aided and abetted the unlawful conduct. Only in his reply brief, after realizing that his claim had no merit, did Movant change his version of the facts and say that he did none of the things he swore that he did when he pled guilty.

Movant's current claim of innocence is not supported by any evidence other than his current assertions. Those statements are not credible and provide no basis for relief from his plea. *See United States v. Lemaster*, 403 F.3d 216, 221–222 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."); *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) (holding that defendant's claim at sentencing that he was innocent as shown by exculpatory statements to his probation officer "fell far short" of satisfying his "heavy burden" of showing his plea admissions were false); *see also United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty

14

plea."). Movant has not shown that his counsel improperly allowed him to plead guilty to something he did not do.

## IV. Certificate Of Appealability ("COA")

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

It is not reasonably debatable that the appeal waiver in Movant's plea agreement bars his prosecutorial misconduct claim in his § 2255 motion and that he has not shown a constitutional violation as to the other claim, as discussed above.

15

Because Movant has not substantially shown that he was denied a constitutional right, a certificate of appealability is not warranted. *See* 28 U.S.C. § 2253(c)(2); *Slack v . McDaniel*, 529 U.S. 473, 483-84 (2000).

## V.     Conclusion

For the foregoing reasons, the undersigned **RECOMMENDS** that Movant's § 2255 motion [149] be **DENIED** and that civil action number 1:14-cv-2648-ODE-GGB be **DISMISSED**. The undersigned further **RECOMMENDS** that a certificate of appealability be **DENIED**.

**SO RECOMMENDED** this 5th day of March, 2015.

_____
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)